May it please the Court. My name is Giovanni Rantes and I'm counsel for Danilo Real and Laurel Brower. Your Honor, I will reserve whatever remains on my clock for reply. My argument really is brief because our Chapter 11 case was brief. We filed a Chapter 11 case in order to save a home as well as discharge over $120,000 in other debt. Unfortunately, before we got a chance to set up the case by valuing the assets, even though we filed a motion for that purpose, we were dismissed, which is not something that is supposed to happen so early on in a bankruptcy case, especially a Chapter 11 case. We were dismissed because the Court believed that it was a bad faith for my clients to move out soon before filing the Chapter 11 case. But what is the status of the property now? Has it been sold or what? Yes, Your Honor. It has been sold to a third party. However, we did record a notice of pendency of action before. So the party has knowledge of dependency of parallel litigation as well as we recorded the petition. So the Court is aware of this litigation here. You don't think that this is moved? I don't believe so, Your Honor, because if we go back to the bankruptcy court, we can recover the property and the new purchaser can have a lien. We can negotiate with them or at the release the new purchaser will have a lien if the bank does not make them whole, but the new purchaser would get paid. The new purchaser took the chance to purchase the property despite what's going on in the case in State Court and here, Your Honor. So your argument is that if you were to prevail here, you would have something. It may not ultimately be the house, but you'd have some property interest of some kind. Correct, Your Honor. And the bankruptcy court has tools, avoidance actions, one of them being a Section 549 avoidance action that could recover the property if the bankruptcy court rules in our favor, Your Honor. So assuming the case is not moot just for a moment, I mean, I've read the transcript and the bankruptcy judge, my words, was not buying what your clients were cooking that day. Correct. And, you know, sometimes as a lawyer that happens. I appreciate that. Yes, Your Honor. But there is a deferential standard of review, I believe, in light of what the bankruptcy judge found. So kind of walk us through how we get around that in this case. Yes, Your Honor. Although the court is entitled to deference, the court should be reversed if it applied the wrong law or made the wrong findings. Here we have Levitt and Blenheim and other cases that set forth what the factors for a finding by faith are. And here, out of the four factors in Blenheim, we have the four factors in Levitt. And Mary, out of the factors in other cases, the only question boils down to whether egregious behavior is present. So because there is nothing else, as the BAP recognized, what do we have here just to move out in some imprecision. Well, the court found that your clients acted in bad faith. Correct, Your Honor. But what she based that on, and she did not make a secret of it, was that moving out and then filing an 11 is bad faith. And this was fully briefed. But what she found, I thought, was that you were moved out and rented the property and were trying to reduce the lien and impair the creditor's interest, which is not a good thing to do. Well, Your Honor, the bankruptcy code, the bankruptcy laws are designed to allow the parties to reach a resolution. And one of the results of such a Chapter 11 plan of recognization is to give to the lender, whoever that lender is, the present value of his asset, of his collateral. So through the Chapter 11 case, we could not confirm the plan unless we gave the lender the present value of the collateral, therefore, and which is more than, I believe, what they recovered at the sale. Normally auctions don't go for very much. So the bankruptcy code itself is entitled to assist debtors. And I believe that most assumptions are supposed to be for the debtor to allow the organization where all the parties get treated fair. Did the bank agree to your moving out and renting the property? Yes, Your Honor. The bank has a provision in the Deed of Trust that says we shall remain in the property for one year. After that, the bank bargained for whatever we wanted to do with the collateral. This is a standard provision in most Deeds of Trust in California that says you shall stay there for at least one year. My clients stayed there for nine years, Your Honor. But the Deed of Trust said that you had to stay there for at least a year. Correct. So you're arguing that, well, it agreed that after a year you could just move out. Correct, Your Honor. And we were exercising our contractual rights, and we should not be punished for exercising contractual rights. There's case law on that point here. The bank bargained to have a collateral that was basically subject to not being modified in a bankruptcy case for a year. My clients remained in the property for nine. They made well over a million dollars in payments after paying almost a million dollars as a down payment. It was only for one of the things that occurred in bankruptcy, which is misfortune that Mr. Real did not, you know, lost his job temporarily, that they found themselves trying to get a loan modification, which they could not do either outside of the bankruptcy process or in the initial Chapter 13 case during which they applied, and they again were denied, as most people are. So finding themselves in that situation, they decided to pay the ultimate price, as commentators have said, and uprooted their family, moved to their mom's house, put the property up for rental, and what that reflects is that this property was purchased with proceeds from the sale of their home in Los Angeles, which they had worked on over many years to make it better, and ultimately they sold it. But they bought this property at the height of the market, so they tried for seven years making the payments on time to not file for bankruptcy relief, in part because Ms. Brower is an attorney, and she doesn't like her colleagues to realize that she's in bankruptcy. So they moved out. The record is clear that they moved out. The record is clear that the court never doubted that they had moved out. It may have doubted that it was a rental. But also I thought it was more nuanced than that. I thought that the bankruptcy court was concerned about the fact that there was conflicting, in fact, they had moved out. They were all over the place, in other words, in terms of what the testimony was. Your Honor, one thing that is important here is that under the local rules, there is no live testimony in a hearing like this unless notice has been given ahead of time. My clients were completely unprepared in trying to testify off the cuff. But the record, which according to your clients, didn't know when they moved, I mean, it's excusable that they didn't know when they moved out of the house? Well, Your Honor, they had it arranged because, you know, they weren't thinking about it. You know, they went in there ready to tell the truth, and that's what they did. But whether they moved out in April, May, or June, it was still prepetition. So was the bad faith found by the bankruptcy court, was it related to the contents of the petition or related to the contents of the plan? Neither, Your Honor. It was simply they moved out. She said they moved out, yeah, maybe right around the date of the bankruptcy. Not real sure, we don't get a firm date. We don't have a lease with the mother, but what she's saying is they moved out, and therefore we have bad faith. As the BAP recognized, we don't have any other factors on Blenheim other than the imposition. But what she talks about is whether they rented it. She was asking, you know, she wasn't clear whether there was a rental. But here the petition has a date. The petition has the address of their residence at the time. So it was related to the petition then? Yes, Your Honor. But she never doubted the petition, Your Honor. She never called the petition into question. And I'd like to save the remainder for reply, Your Honor. Very well. Thank you. Good morning, Your Honors. Bryant Delgadillo for Appellee J.P. Morgan Chase Bank, N.A. This appeal presents no new or compelling arguments that were not presented below and rejected by the Bankruptcy Appellate Panel. What did the Bankruptcy Court find as the bad faith? The Bankruptcy Court below, there was various factors. It wasn't just one, as Appellant's counsel argues. There were a variety of factors that the Bankruptcy Court pointed out and the Bankruptcy Appellate Panel in its decision categorized as well. For example, there are at least seven factors that the Bankruptcy Court, as recognized by the Bankruptcy Appellate Panel, saw as supporting or leading to a conclusion of a bad faith. One was the move-out and the timing of the move-out expressly. The Court noted that the appellants could not have done their lien strip if they had stayed in the property. So the timing of the move-out was critical. And as Your Honor pointed out, the timing, it was unclear based on the testimony. The appellants could not get their story straight on when they actually moved out. So it gave pause clearly to the bankruptcy judge in what their intent was in moving forward. In fact, as the bankruptcy judge pointed out, and it is noted in the opinion below, the whole intent of our purpose of the filing was testified to by the appellant Real at the 341 hearing, and he said his intent was to strip. He confirmed that as well. So those factors, including the timing and not getting their story straight, led to it. The other factor, as Your Honor pointed out, is whether there was conflicting testimony on whether there was a lease. When they moved out, they moved into their mother's property. One appellant testified that there was a lease. The other one testified that she couldn't recall. She didn't think there was a release. And as the Bankruptcy Appellate Court pointed out, the evidence of a lease would have either been Are you saying release or lease? Sorry, a lease, a written lease. I apologize, Your Honor. A lease to someone else to live in the property. The lease that the bankruptcy judge was concerned about was the lease they moved into their mother and mother-in-law's house, and it was unclear whether they signed a lease with the mother-in-law. There was no actual written lease ever produced, I don't believe, was there? There was not, Your Honor. No, with the mother-in-law. Correct. Right. So that was another factor that went to the Bankruptcy Court's finding. And then with respect to other factors that the Bankruptcy Court touched on, but also this Court can look at, is the feasibility of any potential plan. And as the evidence shows in the record, Chase pointed out in their motions to dismiss and supporting papers, even assuming that the loan could be modified as the appellants asked, it still wouldn't have cash flow. They still did not make enough money to be able to satisfy the plan. The appellant, the Bankruptcy Court, also pointed out to the arrearages as well, the fact that there were over $500,000 in arrearages pre-petition that were not addressed. And that could be a factor as well with respect to the timing and their whole intent of collecting rent from the rental property and not taking care of the arrearages. And the third factor, or sorry, the seventh factor that they pointed out and this Court can look at as well, is the pain of property taxes or the lack thereof. The appellants had been in default for approximately 22 months by the time they filed this petition. Obviously, during that time period, the arrearages had accrued. And in addition, Chase had been responsible for property taxes as well. So all of those factors could have been considered and in fact were considered by the bankruptcy judge below. So exactly how did the lien stripping work? Well, it didn't get that far, Your Honor. The appellants had filed a motion to value the collateral at the lien at $1.8 million, thereby reducing the amount on the lien. But the case was dismissed before that motion was dismissed. How did they intend it to work? They intended it to work to strip it down to $1.8 and then offer a plan of how much they would pay on terms. And I think their proposed plan was approximately to pay approximately $7,300 a month towards satisfying that secured debt to Chase at the new $1.8 amount. And as the record shows and the bankruptcy court pointed out in both the hearing, the transcript hearing as well as Chase offered in evidence below and arguments in their motion moving papers, that still wouldn't pencil out even at that amount. And again, that's a factor of what were they doing, what was the purpose here, if they really couldn't confirm a plan other than to reduce the amount and frankly to delay the foreclosure proceeding. One of the issues I wanted, the other issue I wanted to talk about and address, Your Honor, is the mootness issue that Your Honor has pointed out at the outset. As we argued in our brief, we believe this matter is moot. The appellants were unable to obtain a stay pending the appeal to the bankruptcy appellate panel. They presented their emergency motion. It was denied. The panel denied it. Then the matter proceeded, the property proceeded to be foreclosed by Chase. Chase made a credit bid and was the beneficiary that got the property back at the sale. Subsequent to that, Your Honor, Chase has then sold the property to a third party. So there's been a third party now involved as well. I want to point out a couple of things with respect to mootness. Not only is the property gone so it's no longer an asset of the estate, the appellants had an opportunity and they did to try to stay the sale pending the appeal. That was denied. They also filed two actions at the same time as well. They filed a federal court action and a state court action. They were identical actions. In fact, the state court action is still pending. In those actions, they could have asked for injunctive relief from either the federal court or the state court. They did not. There's state law provisions that they could follow to ask for an injunction of the sale if they had, and I believe they did not do that. They didn't do that before. They haven't done it. They didn't do it. But before the emergency stay was denied, after that stay was denied, they didn't go back to the state court and try to get an injunction. And I believe the reason they didn't do that, as we point out in our papers, is there was no prejudicial defect in this foreclosure process. They wouldn't have been able to meet the standard under state law to either undo the foreclosure or prevent the foreclosure. And as we point out, that is the barrier here and why it's moot. The property is gone. They haven't identified a procedural defect in the foreclosure sale. Chase was the proper ---- Well, I think their argument was that whoever purchased it had noticed that they had an interest in the property. So what is your response to that? Sure, Your Honor. And with respect to that argument, the party that purchased it from Chase after the foreclosure sale that did not contain a prejudicial defect, they purchased that property and are BFPs. They're bona fide purchasers for value. They had no knowledge. The only knowledge they had with respect to the property is that it was foreclosed upon, a trustee's deed upon sale was properly issued, showing that Chase was the winning bidder at the foreclosure sale, and they relied on that trustee deed upon sale. And without any prejudicial defects indicated or on the face of that trustee deed upon sale, the bona fide purchaser, this third party that later purchased the property from Chase, had no knowledge or either actual or constructive of the fact that there was a dispute on this property. Again, the only issue, the only alleged defect they point to is the recording of the list pendants. And that's not a procedural defect. That doesn't put any party on notice after the foreclosure, that there's any question about the trustee deed upon sale that was issued, and it's presumed there's a conclusive presumption in state law that the trustee deed upon sale was validly issued and that the foreclosing entity then has a right to transfer that property free and clear. So help me with this. In California, when you sell or buy real estate such as what happened here, do you get title insurance? Was there title insurance in this case? So at the foreclosure, there is not. No, but at the sale to the third party purchaser? Yes, there would be title insurance. And would the list pendants be identified in that title insurance? With respect to this transaction here, I don't know, Your Honor, but typically it would. The title insurer would review the property, the title report, and issue a title policy with respect to that transaction, yes. The other issue I wanted to. . . You've got to wrap up. Thank you, Your Honor. Good wrap up. Thank you, Your Honors. Just a few points, Your Honor. Let me ask you, the intent of your client when they filed bankruptcy was to strip this lien, right? That was one big intent, Your Honor. And according to the statute, you can't do that in a Chapter 11 bankruptcy if you are residing in the principal residence, correct? You can't strip under those circumstances. That is correct, Your Honor. That's why my lawyer client moved out, and his husband, yes. Okay. And so the touchstone or threshold issue here is whether or not your clients were or were not living in the residence at that time, right? Correct, Your Honor. Okay. And that's what the bankruptcy judge really. . . I'm going to talk about these other bases for bad faith, but that's where really the core bad faith was found by the bankruptcy court, as affirmed by the panel. No, Your Honor. The bankruptcy court had plenty of evidence that they had moved out. She was just asking whether the property was a rental already on the date of the petition. She actually said, okay, regardless, even if they moved the month before they filed bankruptcy, I'm going to find this was filed in bad faith. Okay. So she based it completely on the move out. There was no record of any other factors. The plan was feasible at the $7,300 that he says, because even the basic Schedules I and J in the petition that were attached as an exhibit to my position showed that there was enough left over at that point. On top of that, they had over $233,000 in their retirement account they could borrow against to fund it. But we never got to feasibility. The fact that there were arrears is beside the point when you have the ability to modify the loan, as we did after they moved out, Your Honor. So the cash that we're generating from rent was sitting in a segregated account. It would have been turned over to them upon approval of a plan or even before upon a stipulation, which is a normal course that we stipulated. We had over $19,000. The hearing on the motion to dismiss was also a status conference at which the United States trustee program, the branch of the Department of Justice, reviewed our case to see if everything was fine in terms of we were accounting for all the money in, all the money out, whether the money was in the account. And as the United States trustee said, told the judge, everything is in compliance, Your Honor. So we were set to reorganize. All right. Thank you very much, counsel. Thank you both for your argument in this case. This matter is submitted.
judges: Schroeder, Owens, Christensen